IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-CV-00290-RBJ-MJW

ALLSTATE SWEEPING, LLC, a Colorado Limited Liability Company,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipal corporation,
APRIL HENDERSON, CALVIN BLACK, STEVE DRAPER, and RUTH RODRIGUEZ, individually.

    Defendants.

---

### AMENDED ORDER ON ALL PENDING MOTIONS

---

**THIS ORDER AMENDS THE COURT'S ORDER OF DECEMBER 9, 2011 BY ADDING DISCUSSION OF THE QUALIFIED IMMUNITY DEFENSE OF DEFENDANT CALVIN BLACK**

    Pending before the Court are (1) defendant City's motion to dismiss plaintiff's amended complaint [#137]; (2) defendant Henderson's partial motion to dismiss amended complaint [#139]; (3) defendant's Black's motion for summary judgment [#150]; (4) defendant City's motion for summary judgment [#151]; (5) defendant Henderson's motion for summary judgment [#163]; (6) defendants' joint motion in limine [#179]; (7)-(10) four motions by the plaintiff to supplement its prior responses to the motions to dismiss and for summary judgment [##195, 200, 203 and 204).

    **Facts**

    The following recitation of facts is taken from plaintiff's Amended Complaint. The Court will discuss additional facts in the course of addressing the pending motions.

Allstate Sweeping, LLC ("Allstate") is owned and operated by white females. It is engaged in the pressure washing business. Amended Complaint ¶4. The defendants are the City and County of Denver and four individuals who are, or at times relevant to this case were, employees of the City and County of Denver. Ruth Rodriguez, an Hispanic female, was a deputy manager of maintenance and engineering working at the Denver International Airport. She supervised defendants April Henderson, Calvin Black and Steve Draper, all of whom were African-Americans. Amended Complaint ¶10. Ms. Henderson was a contract manager; Mr. Black was a contract compliance technician; and Mr. Draper was a deputy manager for maintenance. *Id.* ¶¶7-9.

In 2005 Allstate submitted what became the winning low bid for a contract to provide pressure washing services at DIA. Amended Complaint ¶13. It initially worked under a purchase order which was replaced with a two plus year contract. It alleges that it fulfilled all requirements under the purchase order and the contract. *Id.* ¶¶ 16-22. However, according to the Amended Complaint, Henderson and Black mistreated Allstate by requiring that it purchase expensive equipment not contemplated in the contract; manipulating assigned tasks in a manner that caused Allstate to lose significant amounts of money; threatening Allstate's bond which jeopardized its ability to contract in the future; preventing Allstate from contracting with United Airlines; instructing Allstate not to use its equipment for any other jobs, on or offsite; ignoring contract protocol by calling Allstate's owners in the middle of the night to complain and intimidate them; making condescending statements about female crew members; micro-managing every detail of Allstate's work, including instructing employees, conducting impromptu inspections, leaving employees stranded on an active runway, and demanding that Black drive Allstate's trucks. *Id.* at 23

It is further alleged that Draper was aware of Henderson and Black's mistreatment, because the three of them met regularly to discuss the Allstate contract, and Allstate sent emails and made phone calls to Draper to complain about Henderson and Black. *Id.* at 24. Allstate alleges that it successfully completed its duties despite Draper's not taking action to remedy a hostile working environment created by Henderson and Black. *Id.* at 27, 28.

Allstate complained to the Mayor of Denver about Henderson, Black, Draper and Rodriguez. *Id.* at 29, 30. However, no action was taken. *Id.* at 31. On May 24, 2007 Allstate sent a letter to Henderson, Draper and others complaining about the alleged discrimination and harassment it was experiencing at DIA. *Id.* at 32. Rodriguez did not take any action to address Allstate's complaints. *Id.* at 33. On May 30, 2007 Rodriguez sent Allstate a contract termination letter, copied to Draper and others, stating the contract would be terminated as of July 1, 2007 for "convenience of the City." *Id.* at 34.

Allstate alleges that after its contract was terminated, defendants continued to retaliate against Allstate by falsely reporting in a May 2008 email that Allstate "defaulted on contract in 07 due to lack of performance and lack of proper equipment," which impairs Allstate's ability to bid on contracts, potentially impairs Allstate's bonding capacity and harms Allstate's reputation. *Id.* at 35. Additional continuing retaliatory behavior includes the City's refusal to pay Allstate's repeated requests for payment in 2008 and 2009. *Id.* at 35.

Plaintiff brings five claims under 42 U.S.C. § 1983: (1) violation of 42 U.S.C. § 1981 against the individual defendants based on racial discrimination and retaliation; (2) violation of 42 U.S.C. § 1981 against the City and County of Denver based on racial discrimination and retaliation carried out by its employees; (3) violation of 42 U.S.C. § 2000d, Title VI, against the City based on racial discrimination by an entity receiving federal financial assistance; (4)

3

violation of the equal protection clause of the Fourteenth Amendment by the individual defendants; and (5) violation of the equal protection clause of the Fourteenth Amendment by the City. Plaintiff seeks both declaratory and monetary relief.

I.  **[PLAINTIFF'S] MOTIONS TO SUPPLEMENT RESPONSES [## 195, 200, 203 and 204]**.

Plaintiff moves to supplement its responses with recent case authority [##195]; with the testimony of William Baca in a deposition taken by defense counsel on November 3, 2011 [#200]; and with the testimony of James Sherman and Stephen Barela in depositions taken by defense counsel on November 3, 2011 in a case entitled *Onesource Commercial Property Services, Inc. and Affordable Sweeping, Inc.v. City and County of Denver, April Henderson, Calvin Black, Ken Greene and Xavier Duran,* No. 10-cv-02273 (D. Colo.).

Defendants oppose #195 on various grounds. It is sufficient to note, as defendant argues, that plaintiff's counsel did not comply with the duty to confer set forth in D.C.COLO.LCiv.R 7.1A. Motion #195 is denied.

Defendants oppose #200 and 203, claiming that plaintiff could have discovered the information earlier, and that supplementation is prejudicial because a ruling on defendants' summary judgment will be delayed and the trial date (four months away) might be jeopardized. The information was developed in depositions taken by the same defendants (#200), three of the same defendants (#203) represented by some or all of the same attorneys. Given that the motions were filed on November 18 and 20, 2011 respectively, and that defendants' response was filed on November 29, 2011, it would not appear that the supplementation has delayed resolution of defendants' dispositive motions. Nor will the supplementation imperil the existing trial date.

4

Motion 204 brings to the Court's attention an order issued by Judge Babcock on November 17, 2011. In a response filed December 5, 2011, Defendant opposes this supplementation, arguing that the case is irrelevant. Whether this very recent authority is relevant is not the issue. Rather, the issue is whether plaintiff can bring it to the Court's attention. The Court wishes to consider any potentially relevant authority, just as it wishes to consider defendants' arguments as to why this new case is not relevant.

The Court does not encourage the piecemeal supplementation of previously filed motions. However, the circumstances here indicate that three of the four supplementation motions (##200, 203, 204) should be, and now are, granted.

## II. MOTION TO DISMISS (DEFENDANTS CITY AND COUNTY OF DENVER, RODRIGUEZ AND DRAPER) [#137].

This motion is moot because of the Court's resolution of the motions for summary judgment filed on behalf of these defendants. I will discuss the portion of the motion that concerns the statute of limitations, because it has potential application to the claims against defendant Black, even though he did not join this particular motion.

### A. Statute of Limitations.

Defendants contend that plaintiff's claims are barred by a two-year period of limitations applicable to claims brought under 42 U.S.C. § 1983. Plaintiff counters that the applicable statute of limitations is four years. Alternatively, plaintiff argues that even if a two-year statute applies the claims did not accrue more than two years before the suit was filed.

The affirmative defense of the statute of limitations may be considered on a motion to dismiss only "when the dates given in the complaint make clear that the right sued upon has been distinguished." *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). "[F]ederal law controls issues related to when federal causes of action accrue." *Alexander v.*

*Oklahoma,* 382 F.3d 1206, 1215 (10th Cir. 2004). Generally a cause of action accrues when the plaintiff knows or has reason to know of the existence and the cause of its injury. *Ibid.*

In its Amended Complaint plaintiff alleges mistreatment by the defendants "from the beginning of its work at DIA." ¶23. However, from the face of complaint, the first date linking the mistreatment to "discrimination" is the May 24, 2007 letter. ¶32. The Complaint was filed on January 28, 2011, approximately three years and eight months later.

1. <u>First and Second Claims (§ 1981).</u>

Section 1981, like many federal statutes, does not include a period of limitation. Historically, federal courts applied "the most appropriate or analogous state statute of limitations" to many federal claims including claims based upon asserted violations of 42 U.S.C. § 1981. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660 (1987). However, perhaps because of the amount of litigation concerning the state limitations period applicable to various federal claims, Congress enacted a catch-all federal limitations statute that provided that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). The date of enactment of the statute was December 1, 1990.

Section 42 U.S.C. § 1981 was, of course, enacted long before December 1, 1990. However, it was amended in 1991. The previous text of § 1981 became 42 U.S.C. § 1981(a). Sections (b) and (c) were added. Section (b) provides that the term "make and enforce contracts" found in section (a) "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) the Court held that civil actions under 42 U.S.C. 1981 based upon racial harassment relating to conditions of employment, i.e., post-contract discrimination that creates a hostile work environment, were made possible by the 1991 amendment's definition of "make and enforce contracts," because it effectively overruled prior Supreme Court authority to the contrary. Therefore, the four-year statute of limitations of 28 U.S.C. § 1658 applies. *Id.* at 382-83.

In *Jones* the defendant employer was a private company. Here the defendant employer is a governmental entity and its employees. Therefore, the action asserting violations of § 1981 were brought under 42 U.S.C. § 1983. However, this Court sees no reason – and defendants present no valid reason – that a case based on alleged violations of § 1981, brought through § 1983, should not be subject to § 1658. Although the claims were brought through § 1983 they were made possible by the 1991 amendment to § 1981 and are therefore subject to § 1658. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337-1338 (11th Cir. 2008).

In *Laurino v. Tate*, 220 F.3d 1213 (10th Cir. 2000), the court held, on the facts presented there, that § 1658 did not apply to the plaintiff's § 1983 claim. Section 1983 was amended in 1996 to limit injunctive relief against judicial offices. However, the plaintiff's claim did not arise in any way under the 1996 amendment, which "did not create a cause of action." *Id.* at 1218. The distinction is that in *Laurino* the plaintiff brought § 1983 claims directly as opposed to bringing § 1981 claims through § 1983 as in this case. *See Baker, supra* at 1337-38.

The motion to dismiss the First and Second Claims is therefore denied.

2. <u>Third, Fourth and Fifth Claims.</u>

The applicable statute of limitation for § 1983 claims brought in Colorado which do not assert violations of § 1981, such as the Title VI and Fourteenth Amendment claims asserted by

plaintiff, is the two-year residual personal injury statute set forth at C.R.S. § 13-80-102(1)(i). *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993); *See Baker v. Board of Regents*, 991 F.2d 628, 630-32 (10th Cir. 1993) (addressing Title VI statute of limitations); *Rossales v. Ortiz,* 325 Fed. Appx. 695, 698 (10th Cir. 2009) (discussing Fourteenth Amendment statute of limitations). Therefore, to the extent that the Third, Fourth and Fifth claims are based on acts that occurred before or during the term of the contract, or at other times on or before January 28, 2009, they are time barred and the motion to dismiss such claims is granted.

Plaintiff alleges that acts of retaliation have continued to the date of the Amended Complaint. To the extent that any such acts occurred after January 28, 2009, they are not barred by the statute of limitations. Again, this is moot as to the moving defendants.

**B. Fed. R. Civ. P. 12(b)(6).**

This part of the motion is denied as moot.

**III.    DEFENDANT HENDERSON'S MOTION TO DISMISS [#139].**

This motion is denied as moot.

**IV.    DEFENDANT BLACK'S MOTION FOR SUMMARY JUDGMENT [#150].**

To prove a § 1981 claim plaintiff must establish that (1) plaintiff is a member of a protected class; (2) defendant had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *See Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995). Absent direct evidence of discriminatory intent plaintiff may use circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* analysis the plaintiff must first prove a prima facie case to preponderance of the evidence standard. If it does so, the defendant is given an opportunity to establish a legitimate, nondiscriminatory motive; once established,

8

plaintiff must prove by a preponderance of the evidence that the motive was pretext for intentional discrimination. *Id.*; *See Cone v. Longmont United Hosp. Assoc.*, 14 F.3d 526, 529 (10th Cir. 1994).

Mr. Black argues that plaintiff has not come forward with evidence showing that there is a genuine dispute of material fact regarding his discriminatory intent. If it were not for the deposition testimony of James Sherman and Stephen Barela which was the subject of motion #203, I would be inclined to agree. There is evidence of unprofessional actions to be sure. However, as his motion notes, [t]he Constitution does not prohibit all boorish or rude behavior." *Lewis v. McDade,* 250 F.3d 1320, 1321 (11th Cir. 2001).

Because Defendant Black is asserting a qualified immunity defense the summary judgment standard is subject to a "somewhat different analysis from other summary judgment rulings." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal citations omitted). To overcome summary judgment based on qualified immunity, the plaintiff "must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Steffey*, 461 F.3d at 1221.

Regarding the first part of the two-part test, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). This means that the Court must determine whether plaintiffs "sufficiently asserted the violation of a constitutional right." *Lighton v.*

*University of Utah,* 209 F.3d 1213, 1221 (10th Cir. 2000). Plaintiffs "must do more than abstractly identify an established right, but must specifically identify the right and conduct . . . which violated that right." *Ibid.* If the violation of a constitutional right is sufficiently alleged, then defendant bears the burden of showing that there are no material issue of fact that would defeat his claim of qualified immunity." *Ibid.*

With respect to the second test, a right is clearly established if it would have been "clear to a reasonable [person] that his conduct was unlawful under the circumstances presented." *Herrera,* 589 F. 3d at 1070. *See also Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Plaintiff has alleged that Mr. Black intentionally interfered with their rights under their contract with the City and County of Denver because of the race (white) and gender (female) of the owners and managers of the plaintiff company. The Court finds that plaintiffs have come forward with evidence sufficient to establish the existence of a genuine dispute of material fact concerning whether (1) whether Mr. Black created a hostile work environment vis-à-vis the plaintiff by acting in such a way as to make plaintiff's contract unprofitable and its owners miserable, and (2) whether he was motivated by bias in favor of African-Americans and African-American owned businesses and/or prejudice against white females and a white female owned business. Plaintiff's allegations and submissions of evidence have been controverted, and the Court is certainly not resolving the merits against Mr. Black or commenting on the strength of plaintiff's evidence. That goes to the ultimate merits of the case. The Court is finding, consistent with *Hererra* and *Lilghton* that plaintiff has sufficiently alleged a constitutional violation, and that plaintiff has presented evidence that, if credited by the trier of fact, could establish a violation.

With respect to the second prong of the qualified immunity test, the Court finds that it is clear to any reasonable person that discrimination by a City employee against a company working under a contract with the City on the basis of race or gender is unlawful.

The Court finds that the deposition testimony of Mr. Sherman and Mr. Barela, even after discounting expressions of purely personal opinion, puts the unprofessional behavior in a different context. This testimony is sufficient to meet the fairly minimal burden of demonstrating the existence of a genuine dispute of material fact as to whether Mr. Black's actions were motivated by racial or gender bias. The Court further finds, for the reasons expressed above, that the defense of qualified immunity has not been established to the point that summary judgment is appropriate. Therefore, the motion for summary judgment is denied.

## V.      MOTION FOR SUMMARY JUDGMENT: CITY AND COUNTY OF DENVER, RODRIGUEZ and DRAPER.  [#151].

### A.  Defendant Rodriguez.

The only facts that appear applicable to defendant Rodriguez are that she sat in a supervisory role to defendants Draper, Henderson and Black in which she should have investigated the claims of discrimination but didn't, and that she signed the termination letter that stated it was for the convenience of the City and County of Denver a week after plaintiff complained about discrimination in a letter addressed to the City. Allstate's discrimination letter was not addressed to Rodriguez. She testified at her deposition, and plaintiff has not disputed, that she was unaware of the letter. Docs. 151-2, 8; 159-4. Rodriguez's signing of the termination letter therefore could not have been discriminatory or retaliatory based on the May 24, 2007 letter from plaintiff. Rodriguez's delegation of authority to Draper, Henderson and Black is not sufficient to find that her actions were motivated by race. Furthermore, Rodriguez testified at deposition that the reason she signed the letter was because it was prepared for her

11

and given to her along with a representation made by Draper that plaintiff wanted out of the contract. Doc. 162-3, 3:21-25; 14:5-15:10; 39:2-15.

The bottom line is that the plaintiff has been given ample opportunity to demonstrate that there is a genuine dispute of material fact regarding Ms. Rodriguez' discriminatory intent. It has not done so. Therefore the motion for summary judgment as to the claims against her is granted.

### B. Defendant Draper.

Plaintiff has come forward with evidence of unprofessional conduct by Mr. Draper. Likewise, there is ample evidence that, as the immediate supervisor of Ms. Henderson and indirectly the supervisor of Mr. Black, Mr. Draper was in a position to know, and likely did know, of plaintiff's multiple complaints of mistreatment by those employees.

However, although the Court has scoured the plaintiff's briefs and exhibits, it has not found anything suggesting that Mr. Draper's poor conduct was motivated by racial or gender bias. The facts that plaintiff is a company owned and operated by white females and that Mr. Draper is an African-American male are not enough. The motion for summary judgment is granted as to him.

### C. Defendant City and County of Denver.

Plaintiff's evidence in summary is that (1) it was owned and operated by white females; (2) it performed satisfactorily under the contract; (3) it was continuously harassed and mistreated by City employees while attempting to perform under the contract; (4) one of the primary employees who engaged in mistreatment was Calvin Black; (5) there is evidence that Black's conduct was motivated by racial or gender bias; (6) six days after plaintiff sent a letter to the City complaining of discriminatory treatment, the contract was terminated; (7) Black told Barela that a company that got the contract subsequent to the plaintiff (AAA National Maintenance) was

12

chosen because "they were a male black company and the City needed something like that." Barela depo. at 87.

A municipality can be found liable under sections 1981 and 1983 only where the municipality itself causes the violation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992). "It cannot be held liable for the acts of its employees on a theory of *respondeat superior*." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188 (10th Cir. 2010). Accordingly, the City and County of Denver cannot be held liable vicariously for the acts of Mr. Black. Rather, a plaintiff must establish (1) a municipal policy or custom, and (2) a direct causal link between the policy or custom and the alleged injury. *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). In order to establish a custom, the actions of the municipal employees must be "continuing, persistent and widespread." *Id.* (quoting *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

The Court finds and concludes that plaintiff has not presented any affidavits, deposition excerpts, documents or other evidence showing that there is a genuine dispute of material fact as to whether the City and County of Denver had a municipal policy or custom of discrimination against white females or that such a policy or custom, if it did exist, was a cause of the harassment and mistreatment allegedly sustained by Allstate or the ultimate termination of the contract. The Court has done what the defendants argued it should not do, i.e."comb through Plaintiff's voluminous submissions in an effort to link alleged facts to [its] arguments or to construct Plaintiff's argument for [it]." Reply at 9. It did so in part because of the evidence of rude and unprofessional conduct by at least three of the individual defendants named. However, in the end, what plaintiff has besides the facts that it is a white female owned company that was mistreated by some African-American employees is the fact that one relatively low level

employee – Mr. Black – shot his mouth off about the helping the "bros," and about how, in his opinion, the City needed to hire a black company when it later hired AAA. That is not enough.

The Court also takes judicial notice of the pleadings in *AAA National Maintenance and Dana Mayfield v. City and County of Denver, Denver Department of Aviation, Kenton Janzen, April Henderson, Ruth Rodriguez and Charlyn Billick,* No. 09CV7 (D. Colo.), presently pending in another division of this Court. The Second Amended Complaint in that case, filed by the same attorney who represents Allstate in the present case, is eerily similar to the Amended Complaint in the present case, with the primary exception that the plaintiff there was an African-American owned and operated company. The plaintiffs (the company and its African-American CEO) allege that the AAA National Maintenance won a bid in 2008 (the bid allegedly manipulated by Calvin Black) for a multi-year contract to provide power washing services at DIA. It describes mistreatment of the company by the individual defendants, including Ms. Henderson and Ms. Rodriguez. It claims that the mistreatment was motivated by discrimination against African-Americans.

Among other things, the Second Amended Complaint in *AAA National Maintenance* contains allegations that no non-African American company was similarly treated by the defendants (¶37); that similarly situated non-African-American vendors and contractors were treated differently (¶78); and that plaintiffs were treated less favorably than non-African-American vendors and contractors because of their race and/or in retaliation for complaining (¶81). The Amended Complaint in the present case, filed after *AAA National Maintenance,* alleges that no similarly situated independent contractor was or is being similarly treated. ¶37. The Second Amended Complaint in *AAA National Maintenance* cites the same studies to support the proposition that the City and County of Denver discriminates against African-Americans as

14

plaintiffs in the present case cite to show that the City and County of Denver discriminates against white females. *Compare* ¶15 of the Second Amended Complaint in *AAA National Maintenance* to ¶37 of the Amended Complaint in the present case.

Clients are not necessarily penalized for the acts of their attorney. However, when an attorney represents to this Court, as an officer of the Court, that the City and County of Denver has a municipal policy or custom of discrimination against white females at the same time that she is alleging that the City and County of Denver has a municipal policy of custom of discrimination against black males, and indeed that two of the same employees have discriminatory intent vis-à-vis white females in one suit and black males in the other, it casts a very big cloud on the allegations in this case. The attorney's inconsistent representations are not dispositive. However, given the Court's futile search for evidence that would create a genuine dispute of fact as to whether the City has a policy or custom of discrimination against white females, this is just "one more thing" that convinces me that the evidence is not there.

Alternatively, plaintiff suggests that perhaps the "cat's paw" theory is applicable here. In *Staub v. Proctor Hospital,* 131 S.Ct. 1186 (March 1, 2011), the Court addressed "the circumstances under which an employer may be held liable for employment discrimination based on the discriminatory animus of an employee who influenced, but did not make, the ultimate employment decision." *Id.* at 1189. It held, "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 1194.

The case obviously arose under a different statute. I am willing to assume, however, that the "cat's paw" theory might be applicable to a case such as the present case. Nevertheless, it

begs the question of whether Mr. Black was a "supervisor," and more importantly, whether he could have or did exert sufficient influence on other city officials that his racial or gender animus can be said to be a proximate cause of the ultimate decision to terminate the contract. His braggadocio that he got rid of Allstate, document #200, Baca depo. at 5-6, is not convincing. The evidence is that Allstate's principal, apparently frustrated by requirements of City employees that had rendered the contract unprofitable, informed the City before sending the May 24, 2007 letter that she wished to terminate the contract. Ex. G to defendants' motion 151 at 41, 44, 47. Ms. Rodriguez, who signed the termination letter but did not draft it, testified that a letter of that nature would have gone through several reviews, including the chain of command. Indeed, in the *AAA National Maintenance* case, the Second Amended Complaint alleged that Ms. Rodriguez (who is three steps up the organization chart from Mr. Black) did not have the authority to terminate the contract. ¶55.

Plaintiff provided no evidence indicating that there are genuine disputes of material fact as to whether Mr. Black was the proximate cause of the termination of the contract. Perhaps this is reflected in the fact that the "cat's paw" theory was offered almost as an afterthought in plaintiff's response brief.

Accordingly, and with due regard for the relatively low burden a plaintiff must meet to avoid summary judgment, the Court finds and concludes that the City and County of Denver is entitled to an order of summary judgment dismissing the claims against it.

**VI.    DEFENDANT HENDERSON'S MOTION FOR SUMMARY JUDGMENT [#163].**

Like defendants Rodriguez and Draper, the Court is not satisfied that plaintiff has come forward with anything showing that there is a genuine dispute of material fact regarding Ms. Henderson's racial or gender bias. She was Mr. Black's immediate supervisor and had substantial contact with him concerning the Allstate contract and Allstate's performance under the contract. She appears, from the evidence presented, to have been part and parcel of the rude, unprofessional conduct that Allstate claims to have suffered throughout the term of the contract. There was at least some evidence that Ms. Henderson had input with Mr. Black in setting the bid specifications that enabled AAA National Maintenance to win the bid for the power washing services in 2008. *See* Sherman depo. at 109-111.

None of that evidence supports the existence of a genuine dispute of material fact as to whether Ms. Henderson's actions vis-à-vis Allstate were motivated by a discriminatory bias against white people or females. Again, too, I take judicial notice of the fact that in the AAA litigation, the same attorney alleges that Ms. Henderson was part of the discrimination against an African-American owned and operated company and its African-American male CEO, and that "defendants," including Ms. Henderson, did not treat non-African-American vendors similarly. In the present case the Amended Complaint alleges that Ms. Henderson is African-American. In the *AAA National Maintenance* case, where she is accused of discriminating against African-Americans, this detail is omitted.

This simply confirms in my mind that plaintiff has not shown that there is a genuine dispute of material fact that would warrant denial of her summary judgment motion. Her motion for summary judgment is granted.

## VII. DEFENDANTS' JOINT MOTION IN LIMINE [#179]

Defendants move in limine for an order precluding plaintiff from offering evidence or otherwise referencing (1) evidence regarding the separations from employment of defendants Black and Henderson, and (2) evidence regarding communications between defendants Black or Henderson and plaintiff's counsel regarding a possible attorney-client relationship. The motion indicates that plaintiff's counsel has indicated that she opposes exclusion of evidence on the separation from employment issue but does not oppose exclusion of evidence on the prospective client communications issue. No response to the motion has been filed on behalf of the plaintiff.

Whether to rule in limine is a matter for the Court's discretion. The Court declines to rule in limine on whether evidence concerning Mr. Black's or Ms. Henderson's separation will be excluded. Depending upon what the evidence is, it might bear on either or both of these individuals' credibility as witnesses at trial. Therefore, to that extent the motion is denied.

Based upon defendants' representation of no opposition and the absence of a response, the Court grants the motion on the prospective client communications issue.

**Order**

Accordingly, consistent with the forgoing discussion,

1. Motion #137 is denied as moot.
2. Motion #139 is denied as moot.
3. Motion #150 is denied. The claims against Mr. Black constitute what remains in this case.
4. Motion #151 is granted. The Court enters judgment in favor of the City and County of Denver, Steve Draper and Ruth Rodriguez and against Allstate Sweeping, LLC dismissing the case with prejudice. The defendants are awarded costs.
5. Motion #163 is granted. The Court enters judgment in favor of April Henderson and against Allstate Sweeping, LLC. The defendant is awarded costs.
6. Motion #179 is granted in part, denied in part.
7. Motion #195 is denied.
8. Motion #200 is granted.

9. Motion #203 is granted.
10. Motion #204 is granted.

DATED this 23th day of December, 2011.

BY THE COURT:

*[signature: Brooke Jackson]*

_____

R. Brooke Jackson
United States District Judge